# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| S.A. et al., | CASE NO. 1:10-cv-00943-OWW-SKO |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFFS' MOTION FOR ATTORNEYS' FEES BE GRANTED IN PART, DENIED IN PART** |
| v. | |
| PATTERSON JOINT UNIFIED SCHOOL DISTRICT, | **OBJECTIONS DUE: 15 DAYS** |
| Defendant. | (Docket Nos. 3, 18) |
| _____ / | |

## I. INTRODUCTION

On May 25, 2010, Plaintiffs filed the instant motion seeking an award of attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B) under the Individuals with Disabilities Education Act ("IDEA"). The attorneys' fees sought relate to professional services rendered by Plaintiffs' counsel in connection with a due process hearing before the Office of Administrative Hearings ("OAH"). Plaintiffs seek $115,333.36 in fees and costs related to the underlying OAH due process hearing as well as costs and fees in the amount of $5,451.50 for preparation of the instant motion. Therefore, in total, Plaintiffs seek $120,784.86 for fees and costs associated with this matter. It is this motion that is currently pending before the Court.

## II. FACTUAL BACKGROUND

Plaintiffs are the parents of a 13-year old child ("Student") with special needs. ALJ Decision at 7. (Doc 12, Exhibit A). During the course of the 2007-2008 school year, Student was enrolled at Apricot Valley Elementary School ("Apricot Valley") and was physically restrained by his teacher and an aide for aggressive behavior on several occasions between December 2007 and January 2008. *Id*. at 11-12. As a result of these incidents, Plaintiffs removed Student from Apricot Valley. *Id*. at 12. After further assessments and observations of Student, Defendant Patterson Joint Unified School District ("District") convened an "individualized education program" ("IEP")[1] meeting on April 4, 2008. *Id*. at 20. The professionals on the "IEP team" discussed various school placement options for Student, including one at Sierra Vista, a non-public school for autistic children with behavior problems. Student's mother visited Sierra Vista and agreed to that placement. *Id.* at 21. Student attended Sierra Vista from April 8, 2008, through June 24, 2008. *Id*. at 25.

Ultimately, Plaintiffs became dissatisfied with various aspects of the Sierra Vista placement and removed Student from the school. From August 2008 through July 2009, the District convened multiple IEP meetings and offered Student a placement at Teel Middle School ("Teel"). Plaintiffs refused all these offers, maintaining that a placement at Creekside Middle School ("Creek side") was an appropriate placement for Student for a variety of reasons, and that the offered placements at Teel and Sierra Vista were not appropriate for Student.

On April 27, 2009, Plaintiffs filed a request or "complaint" for a due process hearing in the matter. This complaint was withdrawn by Plaintiffs in June 2009 while the parties continued to discuss the situation. As Student had not been in school since 2008, the District filed its own due process complaint on November 2, 2009. On November 4, 2009, Plaintiffs refiled their due process complaint. Plaintiffs raised twenty-eight (28) issues regarding the adequacy of the education offered to Student for school years 2007-2008, 2008-2009, and 2009-2010. The District raised five (5) issues regarding the sufficiency of the educational placements and the IEP offers for Student related

---

[1] The term "individualized educational program" or "IEP" means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with 20 U.S.C. § 1414 that includes various components. 20 U.S.C. § 1414(d)(1)(A)(i).

2

to those school years. A due process hearing was held on February 1-4, 8, 9, 16 and 17, and March 3, 2010, before Administrative Law Judge ("ALJ") Peter Paul Castillo. On April 27, 2010, the ALJ issued a 67-page decision, in which he made findings as to each issue raised by the parties. Ultimately, the ALJ found that Student fully prevailed on two (2) issues and partially prevailed on nine (9) other issues. The ALJ also found that the District fully prevailed on twenty-two (22) issues and partially prevailed on nine (9) other issues.

The ALJ explicitly determined that both the Sierra Vista and the Teel placements offered by the District were reasonably calculated to provide Student with meaningful educational progress in the least restrictive environment. *Id.* at 66. However, the ALJ noted certain deficiencies in the District's various IEP offers for the contested school years. The ALJ found that Student was denied a "free and appropriate public education" ("FAPE")[2] during the 2007-2008 school year through April 2008 because the District had failed to hold an emergency IEP meeting and prepare the proper report after the restraining incidents at Apricot Valley in December 2007 through January 2008. *Id.* The ALJ ordered the District to develop a District-wide written protocol requiring an IEP meeting and the creation of necessary reports following restraining incidents. *Id.* at 67.

The ALJ also found that certain District IEP offers from April 2008 were deficient in terms of speech and language goals and occupational therapy services and goals. As a result, the ALJ ordered that Student be provided 600 minutes of speech and language sessions, 400 minutes of occupational therapy sessions, and 25 hours of 1:1 tutoring. *Id.* The District was also ordered to provide Student with various assessments.

In light of the ALJ's determination that Plaintiffs were the prevailing party with respect to two (2) issues, Plaintiffs filed a complaint with this Court on May 25, 2010, seeking compensation for their attorneys' fees under 20 U.S.C. § 1415.

---

[2] The term "free appropriate public education" means special education and related services that have been provided at public expense, under public supervision and direction, and without charge; meets the standards of the State educational agency; includes an appropriate pre-school, elementary school, or secondary school education in the State involved; and is provided in conformity with the individual education program required under Section 1414(d) of title 20 of the United States Code. 20 U.S.C. § 1401(9)(A)-(D).

3

## III.   DISCUSSION

**A.    Legal Standard**

Under IDEA, parents who prevail at an administrative hearing may be awarded attorneys' fees. *See McSomebodies v. Burlingame Elementary Sch. Dist.*, 897 F.2d 974, 975 (9th Cir. 1989). A party seeking an award of attorneys' fees under IDEA must (1) be the "prevailing party" and (2) seek "reasonable attorneys' fees." *Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1117 (9th Cir. 2006). To be considered the prevailing party, there must be a "material alteration of the legal relationship of the parties." *Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004) (quoting *Buckhannon Bd. & Care Home, Inc. v W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001)). In addition to a material alteration of the parties' legal relationship, the success of the party asserting prevailing party status cannot be *de minimus* and must be causally linked to the litigation brought. *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007) (citations omitted). Ultimately, however, determining prevailing party status does not turn on the magnitude of the relief obtained. *Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1035 (9th Cir. 2006).

Once a party is considered a prevailing party, the court's discretion to deny fees is narrow; generally, attorneys' fees must be awarded to the prevailing party under IDEA unless special circumstances would render such an award unjust. *Abu-Sahyun v. Palo Alto Unified Sch. Dist.*, 843 F.2d 1250, 1252 (9th Cir. 1988) (citations omitted). However, the amount of attorneys' fees awarded must be reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Aguirre*, 461 F.3d at 1117-21 (recognizing that *Hensley* applies to IDEA attorneys' fees statute). "This figure, commonly referred to as the 'lodestar,' is presumed to be the reasonable fee." *Hensley*, 461 U.S. at 433. To support the lodestar calculation, the prevailing plaintiff must submit documentary evidence detailing the number of hours spent and how it determined the hourly rate requested. *Id*.

The amount of attorneys' fees requested may be reduced where the court finds that an attorney unreasonably protracted the resolution of the controversy, the amount of fees unreasonably exceeds

4

the hourly rate prevailing in the community, or the time spent and legal services were unreasonable. 20 U.S.C. § 1415(i)(3)(F). Further, the court has discretion to adjust the lodestar calculation downward based on the prevailing party's limited degree of success. *Aguirre*, 461 F.3d at 1117-21; *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (setting forth 12 factors that may be considered in adjusting the lodestar amount).[3] The "most critical factor" in determining the reasonableness of a fee award under 20 U.S.C. § 1415(i)(3)(B) "is the degree of success obtained." *Hensley*, 461 U.S. at 436. If a party "has achieved only partial or limited success, the product of hours expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* "A reduced award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440.

**B.     Analysis**

As an initial matter, both parties request that the Court take judicial notice of various documents. Therefore, the Court will address these requests first.

**1.     Judicial Notice**

Federal Rule of Evidence 201 applies to judicial notice of adjudicative facts. The kinds of adjudicative facts that may be judicially noticed are as follows:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b).

A court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). However, a court's power to take notice of public records does not confer upon it the power to take judicial notice of disputed facts stated in public records. *Id.* at

---

[3] The twelve *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

5

690 (noting that lower district court did more than take judicial notice of undisputed matters of public record).

### a. Defendant's Request for Judicial Notice Should Be Granted in Part, and Denied in Part

In support of its opposition to Plaintiffs' motion, Defendant requests that the Court take judicial notice of Findings and Recommendations issued by Magistrate Judge Dennis L. Beck on January 6, 2009, in *J.A.A.H. et al. v. Modesto City Schs.*, No. 1:08-cv-01465-LJO-DLB, 2009 WL 55951 (E.D. Cal. Jan 6, 2009). (Doc. 25). Defendant also requests that the Court take judicial notice of four declarations filed in that matter: (1) Declaration of Bob Varma; (2) Declaration of Kathleen Loyer; (3) Declaration of Drew Massey; and (4) Declaration of Margaret Broussard.

A court may take judicial notice of a public record which has a "direct relation to the matters at issue," but only of the existence of those matters (e.g., the existence of a public document or of representations in the document); the court cannot take judicial notice of the veracity of arguments or disputed facts in the document. *George W. v. U.S. Dept. of Educ.*, 149 F.Supp. 2d 1195, 1199 (E.D. Cal. 2000); *Cactus Corner, LLC, v. U.S. Dept. of Agriculture*, 346 F.Supp. 2d 1075, 1099 (E.D. Cal. 2004). For example, the existence and authenticity of a public record are judicially noticeable – such as the authenticity and existence of a particular order, pleading, public proceeding, or census report – but the veracity and validity of its contents, such as the underlying arguments made by the parties, disputed facts, and conclusions of fact, are not subject to judicial notice. *Cactus Corner, LLC*, 346 F.Supp. 2d at 1099.

Magistrate Judge Beck's order and the declarations filed in *J.A.A.H.* are all public records, the *existence* of which is subject to judicial notice. The facts contained in each of these documents, however, are not subject to judicial notice because they are neither generally known in the territory nor subject to accurate and ready determination as explained thoroughly in *George W.* and *Cactus Corner, LLC, supra*. Therefore, Defendant's request should be granted only to the extent that the Court may take judicial notice of the existence of the documents; as to the veracity and validity of their contents, the request for judicial notice should be denied.

### b. Plaintiffs' Request for Judicial Notice Should be Granted in Part, Denied in Part

In support of their Motion, Plaintiffs also filed a request for judicial notice. Plaintiff's request that the Court take judicial notice of a report issued by the Government Accountability Office ("GAO") entitled: "*SECLUSIONS AND RESTRAINTS Selected Cases of Death and Abuse at Public and Private Schools and Treatment Centers,*" Government Accountability Office Testimony Before the Committee on Education and Labor, House of Representatives (2009). In *Cactus Corner, LLC*, *supra*, the court took judicial notice of the existence and authenticity of a 2002-2003 Data Report published by the United States Department of Agriculture, Animal and Plant Health Inspection Service. However, the court also specifically refused to take judicial notice to the extent that the requesting party sought to have the court notice the accuracy and validity of the contents. *Id.* The GAO report at issue here is very similar in nature to that at issue in *Cactus Corner, LLC.* While the Court should decline to take judicial notice of the veracity and accuracy of the facts contained within the report, the existence and authenticity of the report are judicially noticeable. Therefore, Plaintiffs' request for judicial notice of the GAO report should be granted to that limited extent.

### 2. The Ten-Day Offer Letter Did Not Offer More Relief Than the Ultimate Decision Rendered by the ALJ

Defendant argues that Plaintiffs are prohibited from recovering any attorneys' fees and costs incurred subsequent to the two offers of settlement proffered by Defendant because those offers provided greater relief than was actually ordered by the ALJ.

Under IDEA, attorneys' fees may not be reimbursed in any proceeding for services performed *subsequent* to the time of a written offer of settlement to a parent if (1) the offer is made more than 10 days before the proceeding begins; (2) the offer is not accepted within 10 days; and (3) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement. 20 U.S.C. § 1415(i)(3)(D)(i)(I)-(III).

Defendant asserts that on July 29, 2009, it sent Plaintiffs a renewed FAPE offer, the terms of that offer were more favorable than the ultimate relief achieved as a result of the due process hearing, and Plaintiffs are barred from any attorneys' fees subsequent to July 29, 2009. Defendant also argues that it renewed the terms of its July 29, 2009, 10-day offer again on January 21, 2010,

which was again rejected by Plaintiffs.

Plaintiffs argue that the July 29, 2009, FAPE offer was not framed as a 10-day settlement offer. The offer was sent to Plaintiffs at a time when no due process hearing was pending due to the fact that Plaintiffs had withdrawn their first due process complaint at that time; therefore, Plaintiffs argue it cannot be construed as a 10-day settlement offer. Reply at 10-11.

The July 29, 2009, offer and the January 21, 2010, offer were functionally identical in their terms. Sturges Decl., Exhibits A, B. Assuming, *arguendo*, that the July 29, 2009, FAPE offer letter constituted a 10-day settlement offer pursuant to Section 1415(i)(3)(D), Plaintiff achieved a more favorable relief as a result of the due process hearing than that proposed by either the July 29, 2009, FAPE offer or the January 21, 2010, 10-day settlement offer.

The ALJ explicitly reviewed the July 2009 FAPE offer and ordered the following *additional* relief: (1) a speech and language assessment; (2) an occupational therapy assessment; (3) neither assessments were to be provided by outside assessors; (4) 600 minutes of compensatory speech and language sessions (District offered 920 minutes); (5) 400 minutes of compensatory occupational therapy sessions (District offered 300 minutes); (6) 25 hours of tutoring services; and (7) a District-developed written protocol regarding the process following holding/restraint incidents.

Plaintiffs concede that the District's offers actually provided more minutes of compensatory speech and language sessions (920 minutes) than the ALJ ultimately ordered (600 minutes), but argue this was offset by the number of increased minutes of compensatory occupational therapy sessions the ALJ required (400 minutes) over what the District offered (300 minutes). Although the District offered 220 more minutes of compensatory education sessions than was ordered by the ALJ, the ALJ ultimately awarded other relief that was not contemplated by the District's offers including: (1) additional speech and language assessments, (2) occupational therapy assessments, (3) 25 hours of 1:1 tutoring, and (4) a requirement that the District create protocol following holding/restraint incidents. Given the ALJ's decision in this regard, Plaintiffs achieved more favorable relief as a result of the ALJ's decision than was offered by the District.

Defendant asserts that the 10-day offer provided Plaintiffs with significant accommodation and that, in relation to what was achieved under the ALJ's decision, the results were not so much

more favorable as to justify a $120,784.86 fee award. Defendant's argument is more aptly considered as one under *Hensley* wherein the court considers the reasonableness of the total fee award in comparison to the degree of the success achieved. The fact remains that the ALJ ultimately awarded four additional items that were not contemplated in either of the District's offers. Thus, the Court finds that neither of Defendant's offers precludes an award of attorneys' fees under Section 1415(i)(3)(D).

    **3.    Lodestar Calculation**

As Defendant does not contest Plaintiffs' prevailing party status, the Court turns to the reasonableness of the attorneys' fees requested and the lodestar calculation. District courts derive a lodestar amount as a product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433.

    **a.    Hours Expended**

Defendant argues that the requested fees should be reduced because the hours billed by Plaintiffs' attorneys were excessive, duplicative, and unnecessary. A court may reduce the hours requested if it believes that the documentation is inadequate, the hours duplicative, or the hours excessive or unnecessary. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

    **i.    Level of Staffing**

Defendant argues that Plaintiffs' counsel expended an inordinate amount of resources to litigate this matter. Defendant maintains that it was able to litigate the entire matter with a single attorney while Plaintiffs utilized three attorneys, one law clerk, and one paralegal. Declaration of Peter Sturges ("Sturges Decl.") ¶ 1; Mot. 17:12-17; Declaration of Tamara Loughrey ("Loughrey Decl.") ¶¶ 11, 25. Defendant points to additional attorneys who attended the hearing and whose participation was limited to taking notes and suggesting questions to pose to the witnesses. Defendant argues that this was not substantive work and billing for professionals who did not participate substantively at the hearing is excessive. Plaintiffs argue that its counsel did not overstaff the litigation, but rather structured the labor in an efficient manner.

After a thorough review of Plaintiffs' counsel's billing invoice regarding the legal services

9

rendered, Ms. Loughrey was careful to limit her participation to contain fees. The majority of preparation work for the hearing was performed by Ms. Christopher (law clerk) and Ms. Dewberry (paralegal), while Mr. Arnold performed more research-based tasks.

As to staffing levels during the course of the due process hearing, the Court finds some of these hours excessive and duplicative. The hearing took place on February 1-4, 8, 9, 16 and 17, and March 3, 2010. Ms. Moskowitz, an attorney who bills $220/hour, attended the hearing on February 1, 3, and 4 to take notes and keep track of evidence submitted. Loughrey Decl., Exhibit B. Plaintiffs argue that notetaking was important at the hearing because there were problems with the recording device. Notwithstanding this problem, notetaking is essentially a clerical function. There is no indication that a paralegal, clerk, or other person at Loughrey & Associates could not have provided "notetaking" services at a lower billable rate. The record reflects that Ms. Moskowitz spent 21.6 hours "taking notes" and "keep[ing] track of evidence admitted" at the hearing on February 1, 3, and 4. Loughrey Decl. Exhibit B. The Court recommends that Ms. Moskowitz's billing for her participation at the hearings in this capacity be reduced by 21.6 hours.

The Court also finds that Plaintiffs' counsel billed for Ms. Loughrey and Mr. Arnold to appear telephonically for the last day of the due process hearing on March 3, 2010, and to meet with clients to discuss closing briefs. Loughrey Decl., Exhibit B. The Court finds this to be duplicative and excessive. Moreover, the billing entries do not delineate the time spent on the separate tasks billed. The Court recommends that 2.7 hours of Mr. Arnold's time on March 3, 2010, be eliminated.

### ii.   Meetings Between Attorneys

Defendant next claims that Plaintiffs may not recover for time their attorneys spent meeting with each other.

Notably, in *J.A.A.H.*, the court awarded fees for meetings between attorneys stating that there was "no indication that this billing practice is prohibited." *See J.A.A.H.*, 2009 WL 55951, at* 6. However, in *In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996), the court deducted fees incurred by the two lowest-billing attorneys where three attorneys billed time spent attending a meeting together. Here, Defendant does not state what billing entries show meetings between the attorneys for which they each billed. A review of the billing records does not show billing entries for multiple attorneys

attending the same meeting.[4]  Moreover, the D.C. Circuit's decision in *In re Mullins* did not prohibit *one* of the attorneys from requesting fees for a meeting that several attorneys attended; it prohibited all three attorneys from billing for the same meeting.  *In re Mullins*, 84 F.3d at 467.  Thus, the Court does not recommend reducing Plaintiffs' counsel's hours in this regard.

### iii. Block Billing

Defendant objects to block billing practices by Plaintiffs' counsel.  Block billing practices constitute legitimate grounds for reducing or eliminating certain claimed hours.  *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008); *see also Welch v. Met Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (courts have discretion to reduce block-billed hours because they may overstate the hours incurred and make it more difficult to determine how much time was spent on particular activities).  A court may reduce the hours requested if it believes the documentation is inadequate, the hours duplicative, or the hours excessive or unnecessary.  *See Chalmers*, 796 F.2d at 1210.

Defendant complains that Plaintiffs' attorneys' billing statement contains 16 hours of block-billed attorney time and 47.1 hours of block-billed paralegal time.[5]  Opp. 14:13-15.  Plaintiffs assert that within each billing entry the amount of time spent on each task is noted in parenthesis and is then added for a total amount.  Reply 7:7-9.

A review of the entries in Plaintiffs' counsel's billing statement reveals multiple block-billing entries that contain no time breakdown by task or large blocks of time that contain insufficient detail:

| **Date** | **Rate** | **Time** | **Billing Entry** |
| --- | --- | --- | --- |
| 4/7/09 | $110 | 9.0 | Review file to create due process facts |
| 4/17/09 | $110 | 8.10 | Continue to prepare due process complaint; Teleconference with client to review facts |
| 4/23/09 | $110 | 6.80 | Prepare and complete due process complaint |

---

[4] On March 3, 2010, both Ms. Loughrey and Mr. Arnold billed for a meeting with their clients.  Mr. Arnold's time is already recommended for elimination in the previous section as duplicative and excessive; therefore, it will not be addressed in this section.

[5] Defendant cites Sturges Decl. 4:¶11 but this paragraph does not point to any specific entry in which Plaintiffs' counsel allegedly block billed.

11

| Date | Rate | Hours | Description |
|---|---|---|---|
| 4/27/09 | $235 | 5.30 | Telephone conference with supervising attorney regarding edits and additions to due process complaint; make edits and additions; file complaint |
| 5/8/2009 | $235 | 4.10 | Review notice of insufficiency; Legal research regarding cases district cited in notice of insufficiency; Prepare response to notice of insufficiency |
| 5/15/09 | $110 | 4.50 | Prepare motion to amend complaint; Review recordings of meetings |
| 6/1/09 | $110 | 5.0 | Prepare for pre-hearing conference by gathering documents to use in evidence |
| 6/2/09 | $110 | 7.40 | Prepare for pre-hearing conference by gathering documents for evidence; prepare list of documents to use |
| 12/10/09 | $110 | 4.50 | Prepare amended due process complaint. Teleconference with client regarding amended complaint and updates on case |
| 1/20/10 | $235 | 4.80 | Review documents to determine evidence and organize for hearing |
| 1/21/10 | $235 | 6.10 | Review all pleadings/documents; Organize/prepare trial binder |

Although Plaintiffs' counsel assert that they carefully provided detailed information with a time entry for each discrete task, the billing entries above do not reflect this. These entries make it nearly impossible to determine how much time each task within a billing entry took to complete, or what the task involved. Also, time spent by the paralegal and the law clerk is indistinguishable because they are not identified by person, only by rate – this is problematic because the law clerk and the paralegal are billed at the same rate. The lack of information makes it difficult to ascertain who performed what tasks. For example, there is a question whether the 12.4 hours spent on June 1 and 2, 2009, gathering documents were performed by the same person or were performed by different people whose work overlapped and duplicated what another had already done.[6] Ultimately, 12.4 hours were spent gathering documents, but there is no indication who did the gathering, how many documents were reviewed in the time billed, or what the "gathering" entailed. Without further information, these entries should be disallowed as failing to provide necessary information and

---

[6] The same is true of the entries on April 7, 17, and 23, 2009. Given the nature of the work, the Court might presume that this was performed by the law clerk and not the paralegal, but this is unclear. Moreover, nine (9) hours reviewing the file on April 7, 2009, without any additional information, appears excessive.

because, without more information, they appear duplicative and unnecessary. *See Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983) (hours not properly billed to one's client are also not properly billed to one's adversary). Therefore, the Court recommends that 45.3 hours[7] of paralegal/law clerk hours and 20.3 hours[8] of Mr. Arnold's billed time be reduced.

### iv.   Billing for Two Due Process Complaints Filed with OAH

Defendant argues that Plaintiffs are improperly attempting to recover the costs of two due process hearings because Plaintiffs withdrew their first due process complaint in June 2009 and did not prevail on it in any respect. Opp. 12:24-28 - 13:1-11. Therefore, Defendant argues that Plaintiffs may only recover for services related to the second due process complaint filed in November 2009 on which they prevailed on two (2) issues. Plaintiffs respond that they were able to use a large portion of the initial complaint to draft the second complaint. Plaintiffs note that they withdrew the first due process complaint without prejudice, intending to later refile their complaint with OAH. Mot. 2:1-2.

Defendant is correct in that Plaintiffs technically could not prevail on their initial complaint because they withdrew it. However, the issues presented in the first complaint were essentially the same issues that were presented in the second complaint. Thus, the second complaint built upon the first. Plaintiffs' counsel spent 46 hours preparing the original complaint. Reply 5:13-14. Counsel then used that work product to draft the second complaint which was completed in only 11 hours. *Id*. at 5:14-15. Therefore, most of the second complaint was the result of work performed drafting the initial complaint. Plaintiffs' counsel utilized the work performed on the first complaint to redraft the second complaint; therefore, the Court finds the hours expended on the first complaint are compensable, even if some of the time spent on the complaint appears excessive.[9]

### v.   Miscellaneous Billing Entries

Defendant argues that Plaintiffs may not recover fees for work related to their counsel's

---

[7] (9 + 8.10 + 6.80 + 4.5 + 5.0 + 7.4 + 4.5 = 45.3)

[8] (5.30 + 4.10 + 4.80 + 6.10 = 20.3)

[9] In a prior section, the Court recommended a reduction of some of the hours expended on the first complaint as excessive.

13

motion to amend the complaint, to continue the due process hearing, and to file a peremptory challenge. While a party does not need to prevail on every motion in a case to obtain attorneys' fees, the work billed must be associated with the relief requested and be reasonably necessary to achieve the results obtained. *Brandon E. v. Dept. of Educ.*, No. CV 07-00536 ACK-LEK, 2008 WL 4602533, *19 (D. Haw. Oct. 16, 2008) (citing *Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F. Supp. 632, 636 (D. Haw. 1993)).

Plaintiffs' motion to amend the complaint was associated with the relief requested, seeking to establish that Defendant had denied Student a FAPE. Although all additional claims added as a result of the amendment were unsuccessful (Sturges Decl. 3:16-17), the failure to prevail on any particular issue or motion does not necessarily prevent a litigant from receiving fees for work associated with that issue or motion. Here, the motion to amend was associated with the relief requested and Plaintiffs believed it was reasonably necessary to achieve the results obtained. *Brandon E.,* 2008 WL 4602533, at *8.

Plaintiffs' motion to file a peremptory challenge is also sufficiently related to the relief requested. Plaintiffs believed that the previously assigned ALJ may not grant appropriate relief even if a favorable ruling was achieved. Reply 6:26-28. The case was ultimately reassigned to a different ALJ, and Plaintiffs' peremptory challenge was successful.

Defendant also challenges time expended on a motion for reconsideration regarding whether Plaintiffs had actually received the July 29, 2009, FAPE offer. The ALJ determined that Plaintiffs received this offer because they included provisions of that FAPE offer in their due process complaint. Even though unsuccessful, Plaintiffs' request for reconsideration was performed in furtherance of the litigation.

Plaintiffs should not, however, recover for work in preparing a motion to continue due to the unavailability of Plaintiffs' counsel. Defendant notes that the need for the continuance arose because one of Plaintiffs' attorney's children was undergoing a medical procedure and the attorney needed to stay home. Sturges Decl. 3:24-27. This motion was necessitated by the personal needs of the attorney. A client is not properly charged for work performed to alter a schedule due to the personal needs of counsel. *See Ramos*, 713 F.2d at 553 (hours not properly billed to one's client are also not

1  properly billed to one's adversary).

2  A review of Loughrey & Associates' billing records reveals that, on November 19, 2009, Mr. Arnold spent 0.20 hours in a teleconference regarding the motion to continue. Either Ms. Christopher or Ms. Dewberry also spent 3.2 hours on November 13 and 19, 2010, preparing and filing the motion to continue. As a result, the Court finds that .2 hours of Mr. Arnold's time and 3.2 hours of paralegal/law clerk time expended on the motion to continue should be eliminated.

Based upon the foregoing, the Court recommends that Plaintiffs' counsel's hours be reduced as follows: (1) 23.2 hours[10] of Mr. Arnold's time eliminated; (2) 21.6[11] hours of Ms. Moskowitz's time eliminated as excessive; and (3) 48.5[12] hours of paralegal/law clerk time eliminated as block billed, excessive, and unreasonable.

### b.     Hourly Rates Prevailing in the Community

Fees awarded under the IDEA must be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. 20 U.S.C. § 1415(i)(3)(C). Fees must be reduced whenever the court finds that the amount of attorneys' fees unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience. 20 U.S.C. § 1415(i)(3)(F)(ii).

Defendant maintains that Plaintiffs' counsel seeks compensation using hourly rates not commensurate with prevailing rates of the community. Specifically, Defendant argues that Plaintiffs' attorney, Ms. Tamara Loughrey, was awarded only $250/hour in a case decided just last year that involved the same applicable local community. *See J.A.A.H.*, 2009 WL 55951. Given this decision, Defendant asserts that Ms. Loughrey's requested $300/hour fee here is unreasonable. Defendant also states that Mr. Arnold's requested fee of $235/hour is excessive because in *J.A.A.H,* Mr. Arnold was only awarded a rate of $195/hour and his additional experience since *J.A.A.H.* is limited and does not support a $40/hour increase. Plaintiffs argue that the hourly rates of Ms. Loughrey and Mr.

---

[10] (20.3 + 2.7 + .2 = 23.2)

[11] (5.0 + 8.0 + 8.6 = 21.6)

[12] (45.3 + 3.2 = 48.5)

15

1  Arnold are similar to those charged in previous cases involving similar communities and that they
2  have gained significant experience in their practice of special education law since the court last
3  determined reasonable rates.
4        Plaintiffs submit three declarations in support of the billing rates requested.  First, Plaintiffs
5  provide the declaration of attorney Jean Murrell Adams, who was licensed to practice in1988, and
6  has practiced in the area of special education law since 2002.  Adams Decl. 1:18, 24-25. (Doc. 7).
7  Her firm has locations "throughout California," and her current billing rate is $410/hour.
8        Second, Plaintiffs provide the declaration of attorney Larisa Cummings who was admitted
9  to the bar in 1987 and has been practicing special education law for twenty-two (22) years.
10  Cummings Decl. 1:21-23. (Doc. 8).  She currently works for Disability Rights Education and
11  Defense Fund, a national law and policy organization in Berkeley, California.  *Id*. 1:24-25. Her
12  billing rate is $565/hour.  She asserts that, at her organization, an attorney admitted to practice in
13  2002 bills $365/hour for her services.  *Id*. 27-28.
14        Lastly, Plaintiffs submit the declaration of attorney Robert Rodriguez.  Mr. Rodriguez has
15  been licensed to practice since 2006 and has represented parents in special education proceedings.
16  Rodriguez Decl. 1:17-21. (Doc. 10).  His current rate in Stanislaus County is $250/hour.
17        Defendant submits the declaration of Peter Sturges who has been an attorney for
18  approximately 20 years, and has worked in the area of education law for 16 years. Sturges Decl.
19  1:25-28.  His firm, in Pleasanton, California, currently charges $210-$215 per hour for his services.
20  Sturges Decl. ¶ 3.
21        Ms. Loughrey was admitted to the bar in 2003.  *See* Loughrey Decl. ¶ 2.  While Ms.
22  Loughrey did not begin practicing exclusively in the area of special education law until 2005, she
23  has been involved in litigation since her admission to practice. Loughrey Decl. ¶¶ 4-6.  Based on
24  the evidence submitted by the parties, the Court finds Mr. Rodriguez's declaration particularly
25  instructive.  Mr. Rodriguez provides legal services in Stanislaus County, where this case arose, and
26  has practiced in special education law since 2006 – which is only one year less than Ms. Loughrey.
27  Moreover, in a prior action for attorneys' fees in this District, Ms. Loughrey was limited to a billing
28

rate of $250/hour for work performed in Stanislaus County. *J.A.A.H.*, 2009 WL 55951 at *8. Since *J.A.A.H.* was decided, Ms. Loughrey has had an additional year of experience in special education law. Based on these factors and the declarations submitted by the parties, a reasonable rate for Ms. Loughrey is $275/hour to reflect her additional year of experience, but reduced from $300/hour to reflect the prevailing rates in Stanislaus County.

Mr. Arnold has been licensed to practice since 2007 and has practiced in the area of special education law since his admission to the Bar. Neither party submits evidence to demonstrate the appropriateness of Mr. Arnold's requested rate. With no attorney of "comparable skill, reputation, and experience" to compare to, the Court considers the decision issued in *J.A.A.H.* where the court determined that, for Stanislaus County, a billing rate of $195/hour for Mr. Arnold's services was reasonable.[13] *J.A.A.H.*, 2009 WL 55951 at *8. Given that *J.A.A.H.* involved applicable rates in Stanislaus County and considering Mr. Arnold has one more year of experience practicing in special education law since *J.A.A.H.* was decided, the Court finds that the reasonable rate for Mr. Arnold is $220/hour.

Based upon all of the foregoing, the Court recommends the following lodestar calculation:

| Professional | Rate | Hours | Total |
| --- | --- | --- | --- |
| Ms. Loughrey | $275 | 141.7 | $39,967.50 |
| Mr. Arnold | $220 | (184.4 - 23.2) = 161.2 | $35,464 |
| Ms. Moskowitz | $220 | (42.8 - 21.6) = 21.2 | $4,664 |
| Ms. Dewberrry/Ms. Christopher | $110 | (174.95-48.5) = 126.45 | $13,909.5 |
| Total | | (543.85 - 93.3) = 450.55 | $94,005 |

### 4. Lodestar Adjustment

Although Plaintiffs are a prevailing party, this Court has discretion to adjust the lodestar calculation downward based on the limited degree of success. *Aguirre*, 461 F.3d at 1117; *Kerr*, 526 F.2d at 70. The "most critical factor" in determining the reasonableness of a fee award under

---

[13] In *J.A.A.H.*, when the Court actually performed the calculations of Mr. Arnold's rate, it was designated as $195/hour.

20 U.S.C. § 1415(i)(3)(B) "is the degree of success obtained." *Hensley*, 461 U.S. at 436. "The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff." *McCown*, 550 F.3d at 922 (citing *Hensley*, 461 U.S. at 436). In reviewing Plaintiffs' request for attorneys' fees, the Court must consider "the relationship between the amount of the fee award and the results obtained." *Hensley*, 461 U.S. at 437. The formula or rule for making the determination as to an adjustment is not precise. *Aguirre*, 461 F.3d at 1122. The district court may attempt to identify particular hours that should be eliminated, or it may simply reduce the award to account for the limited success. *Id.* The Court has the equitable discretion to make this determination. *Id.*

Defendant argues that Plaintiffs' attorneys' fees must be reduced as a result of their lack of success at the hearing before the ALJ and points specifically to the fact that Plaintiffs fully prevailed only two (2) issues. As such, Defendant argues that Plaintiffs may only recover 10% to 25% of the lodestar amount. Plaintiffs argue that, importantly, they succeeded in securing an order from the ALJ that required the District to develop protocol following restraining incidents– a benefit to all students in the District and a significant change in District policy. Plaintiffs further argue that they proved Defendant denied Student a FAPE and many of the successful issues were closely tied to those issues it lost such that it is impossible to parse out the time spent on the winning versus losing issues. Reply 10:5-8. Therefore, Plaintiffs maintain that a reduction of the lodestar amount is not warranted.

Here, Plaintiffs prevailed completely on only two (2) issues and partially prevailed on nine (9) other issues. Plaintiffs succeeded in establishing that Student was denied a FAPE for the 2007-2008 school year through April 2008 because the proper report was not created and an emergency IEP meeting was not held with regard to the restraining incidents in December 2007 and January 2008. The ALJ also determined that occupational therapy and speech and language services were not provided to Student at Sierra Vista pursuant to the April 2008 IEP because of staffing problems. The ALJ further found that IEP offers after April 2008 were deficient in terms of speech and language goals and occupational therapy services and goals.

1   On the other hand, the District fully prevailed on twenty-two (22) issues and partially prevailed on nine (9) other issues. The ultimate relief ordered by the ALJ included seven (7) items: (1) a speech and language assessment; (2) an occupational therapy assessment; (3) neither assessments were to be provided by outside assessors; (4) 600 minutes of compensatory speech and language sessions; (5) 400 minutes of compensatory occupational therapy sessions; (6) 25 hours of 1:1 tutoring services; and (7) a District-developed written protocol regarding the process following holding/restraint incidents.

Importantly, the ALJ determined that the IEP offers of placement at Sierra Vista and Teel were appropriate. Based upon the issues raised by Plaintiffs and addressed by the ALJ, the core dispute between Plaintiffs and the District related to the school placement. This is especially apparent because Plaintiffs have kept Student from school since 2008, maintaining that Teel and Sierra Vista were inappropriate options. However, the ALJ also found that, with regard to Apricot Valley, the District's failure to schedule the emergency IEP meeting and generate the appropriate report after the holding incidents prevented Plaintiffs from meaningfully participating in Student's educational decision-making process. ALJ Decision at 12. Therefore, Plaintiffs did not have sufficient information as to whether additional support or services should have been provided to allow Student to remain at Apricot Valley. *Id.* Considering this finding, the dispute over <u>placement</u> may have been avoided had the District not denied Student a FAPE at Apricot Valley. As a result of this finding, District-wide policy changes were also required, benefitting not just Student, but all other students, parents, and personnel in the District who must grapple with restraining incidents.

In balancing these factors and considering that the District fully prevailed on twenty-two (22) issues, the $94,005 lodestar figure is excessive and the Court finds that a reduction based upon the degree of Plaintiffs' success is appropriate. Considering the degree of success Plaintiffs obtained in contrast with the number of issues prevailed on by the District and the extent of the relief ordered by the ALJ, the Court recommends that Plaintiffs' attorneys' fee award be reduced by 30% to account for Plaintiffs' somewhat limited success in relation to the overall litigation. A 30% reduction amounts to $65,803.50.

## IV.  RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that Plaintiffs' Motion for Attorneys' Fees be Granted in Part and Denied in Part as follows:

1. Plaintiffs' and Defendant's Requests for Judicial Notice be Granted in Part and Denied in Part;
2. Ms. Loughrey's applicable billing rate be reduced to $275 per hour;
2. Mr. Arnold's applicable billing rate be reduced to $220 per hour;
3. Mr. Arnold's hours be reduced by 23.2 hours for a total of 161.2 hours;
4. Ms. Moskowitz's hours be reduced by 21.6 hours for a total of 21.2 hours;
5. Paralegal and law clerk hours be reduced by 48.5 hours for a total of 126.45 hours;
6. The lodestar ($94,005) be reduced by 30% to account for Plaintiffs' degree of success **for a total award of $65,803.50.**

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 2, 2010**                                     /s/ Sheila K. Oberto
                                                                                UNITED STATES MAGISTRATE JUDGE